**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. _____

TONY BOYER,

    Plaintiff,

v.                                     JURY TRIAL DEMANDED

CELERITY SOLUTIONS GROUP, LLC.
DARA TRIBELHORN,

    Defendants.

## COMPLAINT

COMES NOW Plaintiff Tony Boyer ("Plaintiff"), on behalf of himself and others similarly situated, by and through undersigned counsel, and for his Complaint against Defendant Celerity Solutions Group, LLC ("Celerity") and Dara Tribelhorn ("Tribelhorn") (collectively, "Defendants"), states as follows:

1. Plaintiff Tony Boyer ("Boyer") is a citizen of the State of Idaho. He was a medical transcriptionist/editor for Celerity from August 28, 2017 until March 7, 2018. Boyer consented in writing to be a part of this FLSA Collective Action pursuant to 29 U.S.C. § 216(b). Plaintiff's signed consent form is attached hereto as Exhibit 1.

2. Defendant Celerity Solutions Group, LLC is a Delaware limited liability company with its principal place of business in Parker, Colorado. Celerity is a medical transcription company employing approximately 50-100 medical transcriptionists/editors around the United States to work from their homes reviewing, transcribing and editing medical records for

approximately 50 clients, including hospitals and health systems that have contracted with Celerity.

3. Celerity is, and was at all relevant times to this matter, an enterprise engaged in commerce with annual gross volume of sales meeting the jurisdictional requirements under the FLSA meaning of an employer. Celerity is subject to the pay requirements of the FLSA as an enterprise engaged in interstate commerce and its employees are engaged in interstate commerce.

4. Defendant Dara Tribelhorn ("Tribelhorn"), a resident of Parker, Colorado and serves as owner/member and Chief Executive Officer of Celerity. Tribelhorn has maintained operational control of Celerity since its inception in 2008. Tribelhorn is intimately involved in Celerity's day-to-day business operations, "coordinat[ing] all divisions of Celerity towards realization of its vision and purpose."

5. Tribelhorn has been a joint employer of Defendant Celerity's employees pursuant to the FLSA. *See* 29 C.F.R. § 791.2.

6. In her day-to-day job duties as CEO of Celerity, Tribelhorn had the power to hire and fire employees; supervised and controlled employee work schedules and conditions of employment; determined the rate and method of payment; and maintained employment records.

7. On August 28, 2017, Plaintiff began work for Defendants as a full-time MT.

8. Plaintiff and those similarly situated were Defendants' "employees" as defined by § 203(e)(1) of the FLSA and worked for Defendants within the territory of the United States within three (3) years preceding the filing of this lawsuit.

9. Plaintiff and those similarly situated were non-exempt employees within the meaning of the FLSA.

10. This Court has personal jurisdiction over Celerity because it is located and does business in Colorado.

11. Venue in this District is proper under 28 U.S.C § 1391 because Defendants are located in this District and a substantial part of the events and omissions giving rise to the claims occurred in this District.

## FACTUAL BACKGROUND

12. Plaintiff began work for Defendants as an MT pursuant to the terms set forth in his Offer of Employment and Employment Contract which was dated and signed by the parties on August 28, 2017 ("Agreement").

13. The Agreement sets forth Plaintiff's work schedule as Sunday through Thursday from 10:00 AM MST to 6:00 PM MST.

14. In late November 2017, Plaintiff was granted permission to permanently change his schedule from 10:00AM to 6:00PM MST to 1:00PM/2:00PM to 9:00PM/10:00PM MST.

15. Plaintiff's primary duties included utilizing his personal computer and voice-recognition technology to review, edit, and transcribe, medical records and daily dictation from assigned accounts.

16. Defendants paid Plaintiff based on his line output. Plaintiff's rate of pay which was seven and one-half cents ($0.075) per sixty-five (65) character lines transcribed and five and one-half cents ($0.055) per sixty-five (65) character lines edited.

17. Defendants required Plaintiff to ensure completed transcription met a stringent rate of accuracy (*i.e.*, at or above 98%). Defendants also required Plaintiff to complete transcription in a predetermined amount of time ("Turn-around Time" or "TAT").

18.     To ensure accurate transcription, Plaintiff performed various uncompensated duties including but not limited to: researching medications, physicians, and medical facilities; retrieving census and/or patient lists; reviewing and recording patient demographic information; preparing files for upload; retrieving the patient's medical record number and name to verify the correct individual's record was being consulted; ascertaining the accuracy of the patient's name, birth date, and date of visit to the physician for the record at issue; ensuring the dictator's name is entered correctly; ensuring all preliminary background information is entered correctly; ensuring the attending physician's name is entered and marked to receive a copy of the patient report; communicating with company management regarding work-related issues; ensuring the accuracy of physician and patient personal information; ensuring the proper medical term is inserted into the medical record by consulting online sources for spelling and definition information; and communicating with technical support regarding any problems or defects with the transcription/editing and voice-recognition software.

19.     Additionally, Plaintiff performed "additional job responsibilities" which "may be assigned from time to time." As just one example, on December 6, 2017, Defendants' transcription coordinator directed Plaintiff to review a client's patient list and compile a list of all patients for which a dictation was not associated.

20.     Plaintiff worked from his home in Boise, Idaho and primarily communicated with Defendants through its transcription coordinator and by electronic mail. Defendants' transcription coordinator was responsible for assigning clients to Plaintiff and directing Plaintiff to perform additional job responsibilities.

21. Plaintiff used transcription software provided by Defendants to view available dictation work from his assigned clients. The dictation was color-coded based on TAT, and Plaintiff was directed to prioritize transcription accordingly.

22. Plaintiff submitted completed transcription to Defendants using the transcription software. The software calculated line count for pay purposes.

23. Plaintiff was paid based upon the above-described production rates and he received no hourly pay.

24. While not paid hourly, Defendants did require Plaintiff to record and report his hours worked.

25. At the end of each shift, Plaintiff logged into Defendants' web portal site and recorded time worked.

26. Plaintiff routinely worked and recorded hours in excess of forty (40) hours per workweek. Accordingly, Defendants knew Plaintiff worked hours in excess of forty (40) hours per workweek.

27. Defendants paid Plaintiff on a bi-weekly basis. For each pay period, Plaintiff received an electronic paystub from Defendants which listed earnings before and after payroll deductions. The paystubs do not reflect the number of hours Plaintiff worked during a week or pay period.

28. Along with his pay stub, Plaintiff received a spreadsheet which identified the number of lines Plaintiff edited or transcribed per day during that pay period. The spreadsheet did not reflect the number of hours Plaintiff worked during the pay period.

29. Defendants did not consider the number of hours Plaintiff worked for the purpose of calculating his compensation or ensuring compliance with the law.

30. Despite Defendants' knowledge that Plaintiff worked hours in excess of forty (40) hours per workweek, Defendants did not pay Plaintiff at a premium rate of pay for hours worked in excess of forty (40) per workweek. As one instance, for the workweek beginning December 10, 2017 and ending on December 16, 2018, Plaintiff worked forty-two and one-half (42.5) hours, however, Plaintiff was not compensated at a premium rate of pay for the two and one-half hours (2.5) worked in excess of forty (40) hours that workweek. Further, Plaintiff's rate of pay did not meet the statutory minimum wage for each workweek during his employment.

31. Because Defendants knew the number of hours Plaintiff worked and the total compensation he was paid per workweek, Defendants knew or should have known Plaintiff's regular rate of pay and whether it met the applicable legal requirements.

32. Defendants knew or should have known Plaintiff's regular rate of pay did not meet the statutory minimum wage for the hours Plaintiff worked each applicable workweek. Defendants knew or should have known when Plaintiff's regular rate of pay failed to meet the minimum wage.

33. As a result of the policies and practices described above, Defendants failed to compensate Plaintiff at a rate of one-and-one-half times the regular rate of pay for time worked in excess of forty (40) hours in violation of the FLSA.

34. As a result of the policies and practices described above, Defendants failed to ensure Plaintiff was compensated at a rate of at least the state and federal minimum wage in violation of the FLSA.

35. Because Defendants knew Plaintiff worked hours in excess of forty (40) hours per workweek and failed to pay Plaintiff at a premium rate for hours he worked in excess of forty (40) per workweek, Defendants willfully violated the FLSA.

36. Because Defendants knew or should have known Plaintiff's regular rate of pay and failed to pay Plaintiff at the statutory minimum rate, Defendants willfully violated the FLSA.

37. Defendants knowingly and willingly violated the FLSA by failing to keep accurate records.

## COLLECTIVE ACTION ALLEGATIONS

38. Plaintiff brings this lawsuit as a collective action on behalf of himself and similarly situated employees of Defendants pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), as a result of Defendants' failure to comply with the FLSA's overtime and minimum wage provisions set forth in 29 U.S.C. §§ 206-207.

39. Plaintiff and other similarly situated Medical Transcriptionists ("MTs") employed by Defendants were subject to the same form employment contract which set their work schedule and determined their rate and method of pay.

40. Defendants required MTs to perform the same job duties (including the same uncompensated tasks) using the same or similar medical transcription software. MTs were subject to the same or similar production, quality, and timeliness standards and expectations.

41. MTs were subject to Defendants' common policy or plan to pay MTs at a rate per line transcribed or edited.

42. MTs were subject to Defendant's common policy or plan to require MTs to record hours worked. MTs used the same website portal to record their hours worked.

43. MTs received the same or similar pay stubs and line production spreadsheets for each pay period.

44. Defendants established a common policy or plan to not identify the number of hours worked by MTs on their pay stubs.

45. Defendants established a common policy or plan to not consider hours worked when calculating MTs' compensation.

46. Defendants established a common plan or policy to not pay overtime premiums to MTs for hours worked in excess of forty (40) per workweek.

47. Defendants established a common policy or plan of not ensuring MTs were paid at least the statutory minimum rate of pay for hours worked.

48. Defendants knew or should have known that MTs worked hours in excess of forty (40) per workweek but did not pay MTs at a premium rate of pay for hours worked in excess of forty (40) per workweek.

49. Defendants knew or should have known when MTs' regular rate of pay fell below the statutory minimum rate for all hours they worked.

### COUNT I – FAILURE TO PAY MINIMUM WAGE
### IN VIOLATION OF THE FAIR LABOR STANDARDS ACT (FLSA)

50. Plaintiff restates, realleges, and reincorporates all proceeding Paragraphs of this Complaint, as though fully stated herein.

51. The FLSA authorizes court actions by private parties to recover damages for violation of the wage and hour provisions contained within the FLSA individually and on behalf of others similarly situated.

52. Plaintiff and those similarly situated were non-exempt employees within the meaning of the FLSA.

53. Defendants failed to pay Plaintiff at an hourly rate no less than $7.25 per hour for each work week in violation of 29 U.S.C. § 206.

54. Plaintiff is entitled to an award of liquidated damages. Defendants will not be able to meet its high burden of proving that it acted in good faith and with objectively reasonable grounds for believing that its conduct was not in violation of the FLSA.

55. Defendants' violations of the FLSA as stated herein are willful violations resulting in a three-year statute of limitations, meaning that Defendants knew or showed reckless disregard for whether its conduct violated the FLSA.

56. As a result of the aforesaid willful violations of the FLSA's provisions, Defendants unlawfully deprived Plaintiffs of the statutorily required minimum wage.

57. Defendants are liable for unpaid minimum wage compensation, as well as liquidated damages, pre- and post-judgment interest, reasonable attorneys' fees, and costs of this action.

WHEREFORE Plaintiff respectfully seeks judgment against Defendants, individually and collectively, as follows: (1) judgment against Defendants for violation of the minimum wage requirements of the FLSA; (2) an Order certifying a collective action of similarly situated Opt-in Plaintiffs; (3) an award of unpaid minimum wage compensation; (4) determination that the FLSA violations at issue were willful; (5) imposition of liquidated damages; (6) pre-judgment and post-judgment interest as provided by law; (7) incentive awards for participating Plaintiffs as appropriate; (8) an award of reasonable attorneys' fees, litigation and court costs; and such other and further relief as this Court deems fair and proper.

### COUNT II– FAILURE TO PAY OVERTIME IN VIOLATION OF THE FAIR LABOR STANDARDS ACT (FLSA)

58. Plaintiff restates, realleges, and reincorporates all proceeding Paragraphs of this Complaint, as though fully stated herein.

59. Defendants failed to pay Plaintiff compensation at a rate not less than one and one-half times the regular rate for hours worked in excess of 40 per workweek.

60. Plaintiff is entitled to an award of liquidated damages. Defendants will not be able to meet its high burden of proving that it acted in good faith and with objectively reasonable grounds for believing that its conduct was not in violation of the FLSA.

61. Defendants' violations of the FLSA as stated herein are willful violations resulting in a three-year statute of limitations, meaning that Defendants knew or showed reckless disregard for whether its conduct violated the FLSA.

62. As a result of the aforesaid willful violations of the FLSA's overtime pay provisions, Defendants unlawfully deprived Plaintiffs of overtime compensation.

63. Defendants are liable for unpaid overtime compensation, as well as liquidated damages, pre- and post-judgment interest, reasonable attorneys' fees, and costs of this action.

WHEREFORE Plaintiff respectfully seeks Judgment against Defendants, individually and collectively, as follows: (1) judgment against Defendants for violation of the overtime requirements of the FLSA; (2) an Order certifying a collective action class of similarly situated Opt-in Plaintiffs; (3) an award of overtime compensation; (4) determination that the FLSA violations at issue were willful; (5) imposition of liquidated damages; (6) pre-judgment and post-judgment interest as provided by law; (7) incentive awards for participating Plaintiffs as appropriate; (8) an award of reasonable attorneys' fees, litigation and court costs; and such other and further relief as this Court deems just and proper.

Respectfully Submitted,

*/s/ Kevin J. Dolley*
Kevin J. Dolley, USDC No. 54132MO
LAW OFFICES OF KEVIN J. DOLLEY, LLC
2726 S. Brentwood Blvd.
St. Louis, MO 63144
(314)645-4100 (Telephone)
(314)736-8216 (Facsimile)
kevin@dolleylaw.com

*Attorney for Plaintiff and those Similarly Situated*