**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:19-CV-00306

TONY BOYER,
Individually and on behalf of all others similarly situated,

      Plaintiff,

v.

CELERITY SOLUTIONS GROUP, LLC., *et al.*

      Defendants.

---

**PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION AND
APPROVAL OF NOTICE**

---

COMES NOW Plaintiff Tony Boyer ("Plaintiff" or "Boyer"), by and through undersigned counsel, and for Plaintiff's Motion for Conditional Certification and Approval of Notice, states as follows:

**CERTIFICATE OF COMPLIANCE WITH D.C. COLO. L. CIV. R. 7.1(A)**

On April 18, 2019, as part of the Parties' Rule 26(f) Conference to discuss the Joint Proposed Scheduling Order (Doc. #12), Plaintiff's counsel met and conferred with counsel for Defendants Celerity Solutions Group, LLC ("Celerity") and Dara Tribelhorn ("Tribelhorn") (collectively, "Defendants") regarding stipulating to an Order conditionally certifying a collective group of Medical Transcriptionists, Medical Transcriptionists/Editors, or in other positions with similar job duties (hereinafter, "MTs") pursuant to the Fair Labor Standards Act ("FLSA") as a collective action under 29 U.S.C. § 216(b) and allowing Plaintiff's counsel to disseminate a Court-approved Notice to those MTs who worked for Defendants as a MT from three years prior to the

filing of Plaintiff's Complaint through the present. Defendants' counsel stated Defendants would likely not stipulate or agree to conditional certification.

On April 25, 2019, Plaintiff's counsel sent email communication to Defendants' counsel seeking to confirm no agreement or stipulation could be voluntarily reached as to Plaintiff's request for an Order: (1) conditionally certifying this case as a Fair Labor Standards Act ("FLSA") collective action pursuant to 29 U.S.C. § 216(b); (2) approving the form of Plaintiff's proposed Notice to be disseminated to MTs; (3) setting a 60-day Notice period; (4) authorizing Plaintiff's counsel to mail and email the Notice at the beginning of the 60-day Notice period; and (5) ordering Defendants to produce a list in electronic and importable format of all MTs working for either or both Defendants at any time from three years prior to the filing of Plaintiff's Complaint through the present, including each person's (a) name, (b) job title, (c) last known mailing address and telephone number, (d) last known personal email address, (e) dates of employment, and (f) Social Security Number(s) in the event the Notice sent via U.S. Mail is returned to our office as non-deliverable for purposes of attempting to obtain current contact information. (Ex. 6—Email).

Defendants' counsel did not consent to the relief sought herein. (*See* Ex. 6—Email).

## INTRODUCTION

Plaintiff provides more than sufficient evidence to establish conditional certification under 29 U.S.C. § 216(b). This Court should conditionally certify the proposed FLSA collective consisting of "**All persons who worked as Medical Transcriptionists, Medical Transcriptionist/Editors, or in other positions with similar job duties, for Celerity Solutions Group, LLC and/or Dara Tribelhorn at any time during the last three years prior to the filing of this Complaint through the entry of judgment**." The Court should also authorize

Plaintiff to send Court-authorized Notice to MTs—providing them the opportunity to make a claim for unpaid wages and require Defendants to provide Plaintiff's counsel with a list of MTs who are, or were, employed by Celerity and/or Tribelhorn at any time from three years prior to the date of the Complaint filing and continuing through the present. Plaintiff further requests permission to send Notice of this action to these individuals using the Notice and Consent Form attached hereto as Exhibits 3 and 4, and as detailed below.

## FACTUAL BACKGROUND

### I. The Parties.

Plaintiff was employed by Defendant Celerity Solutions Group, LLC ("Celerity") and Defendant Dara Tribelhorn ("Tribelhorn") (collectively, "Defendants") as a MT from on or about September 11, 2017 until March 7, 2018.[1]  Celerity is a Delaware limited liability company with its principal place of business in Parker, Colorado. (Doc. #1, ¶ 2).[2]

Defendant Tribelhorn is a resident of Parker, Colorado who serves as the owner/member and Chief Executive Officer of Celerity. (Doc. #9 admits Doc. #1, ¶ 4). Tribelhorn has maintained operational control of Celerity since its beginning in 2008 and is intimately involved in Celerity's day-to-day business operations, including "coordinat[ing] all divisions of Celerity towards realization of its vision and purpose." (Doc. #9 admits Doc. #1, ¶ 4). Tribelhorn's day-to-day duties as CEO of Celerity include the power to hire and fire employees, supervising and controlling

---

[1] Plaintiff signed his Offer of Employment and Employment Contract on August 28, 2017 but did not begin work for Defendants until September 11, 2017. (Ex. 1—Boyer Decl., ¶ 3).

[2] Factual assertions referencing Defendants' Answer (Doc. #9) indicate whether the allegations in Plaintiff's Complaint are admitted (*e.g.*, "Doc. #9 admits Doc. #1, ¶ 4"). *See infra* p. 4. These admitted facts are also jointly presented to the Court in the Parties' Joint Proposed Scheduling Order. (*See* Doc. #12, pp. 4-7 of 14).

employee work schedules and employment conditions, determining employee rates and methods of employment, and maintaining employment records. (Doc. #9 admits Doc. #1, ¶ 6).

## II.  MTs Share Similar Job Duties And Responsibilities.

Celerity is a medical transcription company employing approximately 50-100 medical transcriptionist/editors around the United States to work from their homes reviewing, transcribing and editing medical records for Celerity's approximately 50 accounts, which include hospitals and health systems that have contracted with Celerity. (Doc. #9 admits Doc. #1, ¶ 2).

During his employment, Plaintiff worked from his residence in Idaho using his own computer, internet service, and medical transcription equipment, including a foot pedal, headset, and reference books to transcribe and edit medical reports dictated by medical doctors and professionals. (Ex. 1—Boyer Decl., ¶ 4; Ex. 2—Offer, p. 5 of 5). Defendants assigned Plaintiff specific accounts located throughout the United States from which dictation was provided for completion. (Ex. 1—Boyer Decl., ¶ 4).

During a telephone call on or around August 28, 2017, Celerity's Transcription Coordinator Denise Vadnais ("Vadnais") informed Plaintiff that all MTs report to her and receive the same Offer of Employment and Employment Contract featuring the same employment terms "offered to everybody." (Ex. 1—Boyer Decl., ¶ 5).

Vadnais also informed Plaintiff that, while other MTs worked from home, no common online forum or any other means existed for Plaintiff to communicate with other MTs for purposes of sharing transcription and editing tips because Celerity did not want MTs "bothered" by communicating with other MTs. (Ex. 1—Boyer Decl., ¶ 7). To Plaintiff, Vadnais conveyed the impression Defendants dissuaded MTs from communication with other MTs by email or any other means. (Ex. 1—Boyer Decl., ¶¶ 7-8).

MTs sign the same Offer of Employment and Employment Contract. (Ex. 1—Boyer Decl., ¶ 5). This document sets the MT's work schedule, rate and method of pay, and employment classification (at-will employee) for all MTs. (Ex. 1—Boyer Decl., ¶¶ 3, 5; Ex. 2—Offer, pp. 2 & 5 of 5).

MTs work out of their home in the same job position. (*See* Doc. #1, ¶¶ 2, 38-49; Doc. #9, ¶ 2; Ex. 1—Boyer Decl., ¶ 4; Ex. 2—Offer, p. 5 of 5). MTs share the same primary job duties, including using their home computers to review, edit, and transcribe medical records and daily dictation from assigned medical accounts. (Doc. #9 admits Doc. #1, ¶¶ 2, 15; Ex. 1—Boyer Decl., ¶¶ 4, 10); *see also* Ex. 2—Offer, p. 5 of 5 (describing job duties). Celerity supplied voice-recognition technology to MTs for them to review, edit, and transcribe medical records and daily dictation from each MT's assigned medical accounts. (Doc. #9, ¶ 12).

Defendants require MTs ensure completed transcription meets stringent, uniform rate of accuracy requirements (*i.e.*, at or above 98% accuracy) governed by Defendants' Quality Assurance check and Celerity's Production Standards and Benefits Grid. (Doc. #1, ¶¶ 17, 40; Doc. #9, ¶ 13; Ex. 1—Boyer Decl., ¶ 9; Ex. 2—Offer, p. 5 of 5).

Defendants admit Vadnais directed Plaintiff to review a client's patient list and compile a list of all patients for which a dictation was not associated. (Doc. #9 admits Doc. #1, ¶ 19; Ex. 1—Boyer Decl., ¶ 11). MTs regularly work overtime hours due to their volume of work, numerous tasks required to accurately transcribe or edit a medical report, and Defendants' stringent accuracy requirements. (Doc. #1, ¶¶ 17-19, 30, 40, 44-45; Doc. #9, ¶ 13, 15; Ex. 1—Boyer Decl., ¶¶ 10-11, 18-20). Plaintiff, for instance, recorded approximately 42.5 hours worked for the workweek beginning December 10, 2017 and ending December 16, 2017 but was not compensated at a

premium rate for the hours worked in excess of 40 that workweek.  (Doc. #1, ¶ 26, 30; Ex. 1—Boyer Decl., ¶ 19).

To ensure accurate transcription or editing of medical reports, MTs must engage in certain non-productive tasks such as searching to secure accurate spelling of medication, physician names, physician contact information, and medical facilities; retrieving census and patient data; reviewing recording patient demographic information; retrieving the patient's medical record number and name to ensure the correct individual's record is being referenced; and many other similar non-productive duties.  (Doc. #1, ¶¶ 18, 40; Ex. 1—Boyer Decl., ¶ 10; Ex. 2—Offer, p. 5 of 5).

### III.   Defendants' Production-Based Compensation Of MTs.

Defendants have no policies in place ensuring MTs are paid overtime at a premium rate for hours worked in excess of 40 per workweek or that MTs' regular (hourly) rate of pay met the statutory minimum wage during the statutory period (*i.e.*, three years prior to the filing of the Complaint through the present).  (Doc. #1, ¶¶ 34, 47; Ex. 1—Boyer Decl., ¶¶ 12-22).  Defendants compensate MTs on a production basis per line transcribed or edited without regard for hours worked.  (Doc. #1, ¶¶ 16, 23, 29-30, 41, 44-45; Doc. #9, ¶ 21; Ex. 1— Boyer Decl., ¶¶ 12, 18-20; Ex. 2—Offer, p. 5 of 5).  Plaintiff earned seven and one-half cents ($0.075) per 65-character lines transcribed and five and one-half cents ($0.055) per 65-character lines edited.  (Doc. #1, ¶ 16; Doc. #9, ¶ 13; Ex. 1— Boyer Decl., ¶ 13; Ex. 2—Offer, p. 5 of 5).  MTs are paid based upon the above-described production rates (per line transcribed or edited) and receive no hourly pay.  (Doc. #1, ¶¶ 23, 39, 41; Doc. #9, ¶ 16; Ex. 1—Boyer Decl., ¶ 12; Ex. 2—Offer, p. 5 of 5; Ex. 5—Sample Paystub).

MTs submit completed transcription to Defendants using Defendants' transcription software, which calculates a MT's line count for pay purposes.  (Doc. #1, ¶¶ 22, 28, 40, 43; Doc.

#9, ¶ 16; Ex. 1—Boyer Decl., ¶ 14). MTs are paid on a semi-monthly basis and receive a common spreadsheet identifying the number of lines they edit or transcribe per day during a pay period. (Doc. #1, ¶¶ 27-28, 43; Doc. #9, ¶¶ 19-20; Ex. 1—Boyer Decl., ¶ 15).

### IV.    Defendants' Timekeeping Policy.

MTs report hours worked by logging into Defendants' web portal site. (Doc. #1, ¶¶ 24-25, 42; Doc. #9, ¶ 16; Ex. 1—Boyer Decl., ¶ 16). Defendants receive daily and cumulative weekly hours worked by MTs per workweek. (*Id.*). However, Defendants give no consideration to MTs' number of hours worked when compensating them. (Doc. #1, ¶¶ 28-37, 41-49; Doc. #9, ¶ 20-21; Ex. 1—Boyer Decl., ¶¶ 12-22); *see also* Ex. 2—Offer (**not** discussing overtime pay or ensuring MTs earn at least minimum wage). For instance, neither the MTs' semi-monthly paystubs nor production spreadsheets identifying line production per pay period reflect the number of hours worked by MTs. (Doc. #1, ¶¶ 27-28, 42-43; Doc. #9, ¶¶ 19-20; Ex. 1—Boyer Decl., ¶ 17; Ex. 5—Sample Paystub). Since MTs record and report their hours worked through Defendants' web portal site, Defendants know (or, at minimum, should know) the number of hours MTs work per week and whether their compensation meets the legal requirements for overtime and minimum wage under the FLSA. (*See* Doc. #1, ¶¶ 24-25, 42; Doc. #9, ¶ 16; Ex. 1—Boyer Decl., ¶¶ 14, 16, 21).

## ARGUMENT

Under the FLSA, an action for unpaid overtime wages and minimum wage may be maintained "by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). "No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." *Id.*

**I.      Legal Standard.**

The FLSA's collective action mechanism serves the dual purpose of lowering litigation costs for individual plaintiffs and decreasing the burden on the courts through efficient resolution in one proceeding of common issues of law and fact arising from the same alleged unlawful wage and hour activity. *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989). "These benefits . . . depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Id.* The district court "has a managerial responsibility to oversee the joinder of additional parties to assure that the task is accomplished in an efficient and proper way." *Id.* at 170-71; s*ee also Turner v. Chipotle Mexican Grill, Inc.,* 123 F. Supp. 3d 1300, 1305-09 (D. Colo. 2015) (denying application of any "certification rubric" to FLSA collective actions and holding the more lenient misjoinder and severance requirements in Federal Rules of Civil Procedure 21 and 42 "are the proper vehicles for challenging individual plaintiffs in an FLSA collective action").

While many courts use the "two-step" standard[3] when determining whether to conditionally certify a FLSA collective action, some courts—including at least one in this District—are re-interpreting the legal standard governing conditional certification in light of the FLSA's history and Congressional intent. *Compare Murphy v. Allstaff Med. Res., Inc.*, No. 16-cv-2370, 2017 WL 6945036, at *2 (D. Colo. June 13, 2017) (applying two-step standard) *with Turner*, 123 F. Supp. 3d at 1305-09 (not applying two-step standard).

In this District, the Hon. John L. Kane has recently analyzed the history and text of the FLSA and questioned the propriety of applying any certification requirements to a FLSA collective action. *See Turner*, 123 F. Supp. 3d at 1305-09.  Judge Kane analyzed the FLSA and held plaintiffs

---

[3] The "two-step" standard is described in detail below.  *See infra* pp. 9-12.

asserting a FLSA collective action are not required to provide substantial allegations that they are subject to a "single decision, policy, or plan" to prevail. *Id.* at 1309. Judge Kane concluded such "certification" requirements are appropriate for plaintiffs using 29 U.S.C. § 216(b) to assert a collective action under the Age Discrimination in Employment Act ("ADEA"). *Id.* at 1308-09. However, since individuals bringing a claim collectively under the FLSA are not required to "demonstrate invidious intent" on the part of their employer(s), Judge Kane held "[p]rohibiting potential FLSA wage-claim party plaintiffs from joining as a collective because they do not meet the legal standards for discrimination, in my view, would be a profound miscarriage of justice." *Id.* at 1309. Judge Kane concluded a plaintiff asserting a FLSA collective action should send out notice to the proposed putative class as soon as possible "with the understanding that individuals may be challenged and severed from the collective if the basis for their joinder proves erroneous." *Id.*

If this Court applies Judge Kane's analysis in *Turner*, then notice to the MTs shall proceed and the Court may proceed to analyzing the content and terms of Plaintiff's proposed Notice (Ex. 3) in Sections III and IV, *infra*. However, this Court and the Tenth Circuit have also applied the two-step standard when determining whether to conditionally certify a FLSA collective action. *See Thiessen v. Gen. Elec. Capital. Corp.*, 267 F.3d 1095, 1102-03, 1105 (10th Cir. 2001) (applying two-step standard); *Daugherty v. Encana Oil & Gas (USA), Inc.*, 838 F. Supp. 2d 1127, 1132 (D. Colo. 2011) (same).

Courts commonly conditionally certify FLSA collective actions when a plaintiff demonstrates the existence of a group of "similarly situated" employees. *See* 29 U.S.C. § 216(b). This Circuit, like most others, has applied a two-step approach to certification of FLSA collective actions. *Thiessen*, 267 F.3d at 1102-03, 1105. At the first stage of the two-step approach—

commonly referred to as the "notice stage"— "a plaintiff 'requires nothing more than substantial allegations that the putative collective action members were together the victims of a single decision, policy or plan.'" *Murphy*, 2017 WL 6945036, at *2 (citing *Thiessen*, 267 F.3d at 1102). Plaintiffs "need not show that members of the conditionally certified class are actually similarly situated" for the court to grant FLSA conditional certification. *See, e.g.*, *Rikard v. U.S. Auto Protection, LLC*, No. 4:11-CV-01580, at *5 (E.D. Mo. Dec. 23, 2011) (citation omitted).

As this Court held in *Daugherty v. Encana Oil & Gas (USA), Inc.*, the standard at the notice stage is "lenient" and conditional certification is commonly granted. *Daugherty v. Encana Oil & Gas (USA), Inc.*, 838 F. Supp. 2d 1127, 1132 (D. Colo. 2011) (citing *Renfro v. Spartan Computer Svcs., Inc.*, 243 F.R.D. 431, 432 (D. Kan. 2007)). Courts rely on the allegations in plaintiff's complaint and any declaration submitted by the plaintiff to grant conditional certification. *Id.* In *Daugherty*, this Court conditionally certified a nationwide collective of oil and gas "pumpers." *Daugherty*, 838 F. Supp. 2d at 1133. This Court applied the lenient "notice" stage standard while granting conditional certification in *Daugherty*: "[t]his Court [grants conditional certification] without expressing any opinion as to whether discovery will identify any others who are similarly situated, whether plaintiff would be able to make a sufficient showing to avoid decertification of the conditional class, or whether plaintiff's claims in this case have merit. *Id.*; *see also Slaughter v. Sykes*, No. 17-cv-02038, 2018 WL 1556881, at *1 (D. Col. March 12, 2018) (conditionally certifying putative class of team leaders based on allegations in plaintiff's complaint); *Murphy*, 2017 WL 6945036, at *2 ("Looking solely to the allegations of the complaint and the declaration of Plaintiff, this Court finds that Plaintiff has satisfied the minimal burden necessary for the conditional certification of a collective actions under §216(b)").

At the notice stage, courts do not consider arguments concerning allegations of individual differences between potential putative collective members and it is unnecessary for individuals to show interest in joining the FLSA collective action for the court to conditionally certify the collective action. *See, e.g.*, *Stransky v. HealthONE of Denver, Inc.*, No. 11-cv-02888, 2012 WL 6548108, at *4 (D. Colo. Dec. 14, 2012) ("At the conclusion of discovery, the Court makes a second determination of whether the plaintiffs are 'similarly situated' under the stricter standard, which include analysis of the "disparate factual and employment settings of the individual plaintiffs") (citing *Thiessen*, 267 F.3d at 1103)). *Brown v. Money Tree Mortgage, Inc.*, 222 F.R.D. 676, 682 (D. Kan. 2004) ("[T]he court will examine the individual plaintiffs' disparate factual and employment settings, as well as the various defenses available to the defendant which appear to be individual to each plaintiff, during the 'second stage' analysis after the close of discovery"); *Leuthold v. Destination America,* 224 F.R.D. 462, 468 (N.D. Cal. 2004) ("Defendants' arguments in their opposition brief focus on the more stringent second tier analysis and raise issues that may be more appropriately addressed on a motion for decertification after notice is given to the proposed class"); *Goldman v. Radjoshack Corp.,* No. Civ. A. 2:03-CV-032, 2003 WL 21250571, at *8 (E.D. Pa. April 16, 2003) ("A fact-specific inquiry is conducted only after discovery and a formal motion to decertify the class is brought by the defendant"); *see also Pivonka v. Bd. of Cty. Cmr's. of Johnson County, Kansas*, No. 04-2598, 2005 WL 1799208, at *5 (D. Kan. July 27, 2005) (conditionally certifying collective including lieutenants and captains even though lieutenants and captains showed "no interest in joining" the lawsuit).

If the plaintiff alleges defendants uniformly violated clear statutory obligations (*e.g.*, failed to pay members of the putative collective overtime and/or minimum wage), then conditional certification will be granted.   *See, e.g.*, *Daugherty*, 838 F. Supp. 2d at 1131-32 (granting

conditional certification based on allegations defendant uniformly failed to pay overtime to putative collective of "pumpers"); *see also Bellaspica v. PJPA LLC,* No. CIV. 13-3014, 2014 WL 945003 (E.D. Pa. Mar. 11, 2014) (conditionally certifying collective action based on theory of excessive non-tipped work across work titles); *Winfield v. Citibank, N.A.*, 843 F. Supp. 2d 397, 404 (S.D.N.Y. 2012) ("[t]he relevant 'issue . . . is not whether Plaintiffs and [potential opt-in plaintiffs] were identical in all respects, but rather whether they were subjected to a common policy to deprive them of overtime pay when they worked more than 40 hours per week"); *Rikard*, 2011 WL 6754908, at *4 (granting conditional certification based on allegations concerning defendant's uniform "decision, policy, or plan" to not pay overtime to sales representatives); *Salinas-Rodriguez v. Alpha Svcs., LLC*, No. AGN, 2005 WL 3557178, at *4 (S.D. Miss. Dec. 27, 2005) (certifying collective of all H-2B workers, regardless of work performed, based upon common unlawful pay policies under the FLSA). Courts routinely grant conditional certification in cases involving whether members of the putative collective were uniformly denied overtime and/or minimum wage. *See, e.g.*, *Winfield,* 843 F. Supp. 2d at 404; *Rikard*, 2011 WL 6754908, at *4-5.

## II.     Plaintiff Presents More Than Sufficient Evidence To Establish Conditional Certification Under 29 U.S.C. § 216(b).

Regardless of the legal standard applied, Plaintiff meets the lenient burden for FLSA conditional certification.

Plaintiff presents substantial evidence demonstrating the propriety of conditional certification. As shown above, MTs share similar job titles, job duties, functions, and responsibilities pursuant to the same form Offer of Employment. *See supra* Factual Background, § II (noting Celerity's Transcriptionist Coordinator Vadnais informed Plaintiff MTs are all subject to the same uniform job responsibilities and standards shortly before he began working for

Defendants). MTs are also held to the same production and quality requirements. *See supra* Factual Background, §§ II-III.

MTs have been uniformly denied lawful compensation pursuant to the FLSA as a result of Defendants' common, bright line policy of not paying MTs for overtime hours worked and not ensuring MTs earn an hourly rate of at least minimum wage. *See supra* Factual Background, §§ III-IV. Since Defendants do not consider hours worked when calculating MTs' pay, MTs are uniformly not paid overtime at a premium rate and receive no guarantee they will receive an hourly rate of at least minimum wage. *See id.* For example, if a MT in Idaho works 42.5 hours in a workweek, then he will not receive overtime pay at a premium rate for the 2.5 hours in excess of 40 during that workweek. Likewise, a MT in Georgia working 30 hours in a workweek but only paid a gross amount of $200.00 will only earn a regular rate of $6.66 per hour. Defendants' uniform compensation of MTs per line transcribed or edited without considering the number of hours worked or recorded by MTs deprives MTs of overtime pay for hours worked in excess of 40 per workweek and/or a regular rate of pay commensurate with the minimum wage.

Conditional certification is clearly warranted.

### III. Court-Authorized Notice.

Plaintiff requests the Court authorize Plaintiff's counsel to distribute the proposed Notice and Consent Form submitted as Exhibits 3 and 4 to MTs.

Plaintiff's proposed Notice is "timely, accurate, and informative." *See Hoffmann-LaRoche*, 493 U.S. at 172; *Smith v. Pizza Hut, Inc.*, No. 09-CV-01632, 2012 WL 1414325, at *7 (D. Colo. Apr. 21, 2012) ("Under the FLSA, the court has the power and duty to ensure that the notice is fair and accurate, but it should not alter plaintiff's proposed notice unless such alteration is necessary") (citation omitted). Plaintiff's proposed Notice should be approved because it is

written in plain, clear, accurate, and instructive language. *See, e.g.*, *Darrow v. WKRP Mgmt., LLC*, No. 09-CV-01613, 2012 WL 638119, at *5-6 (D. Colo. Feb. 28, 2012) (noting importance of accuracy in notice).

Distribution of notice by U.S. Mail and email is routinely approved by Courts in this District and should be approved here. *See Brayman v. KeyPoint Govt. Sol., Inc.*, No. 18-cv-0550, 2018 WL 5776373, at *8 (D. Colo. Nov. 1, 2018) ("All notices must at least be sent by U.S. Mail; they may in addition be sent via electronic mail"); *Sobolewski v. Boselli & Sons, LLC*, No. 16-cv-01573, 2017 WL 4586108, at *3 (D. Colo. Oct. 16, 2017) (approving notice sent by email); *Murphy*, 2017 WL 6945036, at *3 (same); *Dempsey v. Jason's Premier Pumping Svcs., LLC*, No. 15-cv-00703, at *2 (D. Colo. Nov. 11, 2015) (same).

A 60-day notice period is commonly and routinely approved in this District. *See, e.g.*, *Grady v. Alpine Auto Recovery LLC*, No. 15-cv-00377, 2015 WL 3902774, at *3 (D. Colo. June 24, 2015) (granting 60-day notice period); *Stransky v. HealthONE Denver, Inc.*, 929 F. Supp. 2d 1100, 1112 (D. Colo. 2013) (same).

Plaintiff requests that within 14 days of the Court's order, Defendants provide Plaintiff's counsel with a list of MTs (*i.e.*, Medical Transcriptionist/Editors or similarly named positions with similar job duties) for the preceding three years prior to the filing of the Complaint through the present. This list should be in electronic and importable format (such as an Excel file) and include (1) name, (2) job title, (3) last known mailing address and telephone number, (4) last known email address, (5) dates of employment, and (6) if U.S. Mail is returned as undeliverable to Plaintiff's counsel's office, then the MT's Social Security Number (last four digits only).[4]

---

[4] Due to the three-year time period, Social Security numbers might need to be requested from Defendants' counsel by Plaintiff because, for some employees, the contact information Defendants have could be outdated. The Social Security numbers will assist in obtaining current contact

Court-ordered production by a defendant of a list of those similarly situated is necessary to carry out notice in FLSA collective actions. *See Hoffmann-LaRoche*, 493 U.S. at 165, 170 (affirming district court decision permitting discovery of names and addresses of putative class); *Brayman*, 2018 WL 5776373, at *8 (ordering defendant to provide plaintiff's counsel with a list of all potential collective action members, including name, position, dates of employment, last known mailing address, last known email address, and last known telephone number); *Slaughter*, 2018 WL 1556881, at *3 (ordering defendant to provide plaintiff's counsel with a computer-readable list of potential collective action members' names and last known mailing addresses, telephone numbers, email addresses, and dates of employment); *Murphy*, 2017 WL 6945036, at *4 (ordering defendant to provide plaintiff with potential putative collective action members' mailing addresses, email addresses, phone numbers, job titles, and dates of employment).

## CONCLUSION

WHEREFORE, Plaintiff respectfully requests this Court (1) grant Plaintiff's Motion for Conditional Certification and Approval of Notice pursuant to the FLSA, 29 U.S.C. § 216(b); (2) order Defendants produce to Plaintiff's counsel within 14 days of the date of this Court's Order in a readable electronic format a list of those similarly situated that includes: (a) name, (b) job title, (c) last known mailing address (d) telephone number, (e) last known email address, (f) dates of employment, (g) Social Security Number(s) (in the event Notice sent via U.S. Mail is returned to Plaintiff's counsel's office as undeliverable); (3) authorize for dissemination the Notice and Consent Form as proposed in Exhibit 3 (Notice) and Exhibit 4 (Consent Form); (4) and for such other and further relief as this Court deems just and proper under the circumstances.

---

information for putative collective members if necessary and will only be used for purposes of seeking to verify non-delivered Notice(s) to obtain current contact information upon receipt of returned mail.  b

Respectfully Submitted,

*/s/ Kevin J. Dolley*
Kevin J. Dolley, USDC No. 54132MO
LAW OFFICES OF KEVIN J. DOLLEY, LLC
2726 S. Brentwood Blvd.
St. Louis, MO 63144
Telephone: (314) 645-4100
Facsimile: (314) 736-6216
kevin@dolleylaw.com

*Attorney for Plaintiff Tony Boyer*
*and Those Similarly Situated*

## CERTIFICATE OF SERVICE

I hereby certify that I have on May 6, 2019 served a true and accurate copy of the foregoing through the Court's CM/ECF system to the following:

Peggy E. Stevens
Law Offices of Peggy Stevens, P.C.
P.O. Box 260271
Lakewood, CO 80226-0271
Telephone: (303) 274-4300
Email: pstevens@peggystevenslaw.com

*/s/ Kevin J. Dolley*