IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 19-cv-00306-RBJ

TONY BOYER,

      Plaintiff,

v.

CELERITY SOLUTIONS GROUP, LLC and
DARA TRIBELHORN,

      Defendants.

---

## ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

---

This matter is before the Court on plaintiff's motion for summary judgment. ECF No. 48. For the reasons outlined below, plaintiff's motion is GRANTED in part and DENIED in part.

## I. FACTS

The parties do not dispute the following facts. Defendant Celerity Solutions Group, LLC ("Celerity") is a medical and non-medical transcription service that was formed in 2008. ECF No. 48 at ¶1. It is located in Parker, CO. ECF No. 51 at 1. Defendant Dara Tribelhorn is the owner and Chief Executive Officer ("CEO") of Celerity. ECF No. 51 at 1.

Plaintiffs in this case are Tony Boyer, Rebecca Bowen, JoAnna Quintana-Davis, Patricia Nunn, Tiffani Bishop, Lori Morrison, Rebecca Tully, B.J. Whitney, Debra Velovitch, Kaitlin Jorgensen, and Danielle Harris. *Id.* at 1; ECF No. 51 at 2.

Defendant Ms. Tribelhorn has worked in the medical transcription industry since 1992 and has over 30 years' experience in the industry.  Ms. Tribelhorn has owned and managed Celerity since its formation in 2008.  ECF No. 51 at 2.  Plaintiffs have all worked at Celerity as Medical Transcriptionists ("MTs").  *Id.* at 2.  Plaintiff Mr. Boyer worked for Celerity from August 28, 2017 to February 21, 2018.  ECF No. 48-7 at 3.  Mr. Boyer resigned from Celerity on February 21, 2018 via email stating in part that his position had "less than minimum wage compensation."  *Id.*

Celerity employs between 50 and 100 MTs.  ECF No. 51 at 1.  MTs provide medical transcriptionist services.  They are required to review, transcribe, and edit audio files of medical transcriptions for approximately 50 clients, including hospitals and health systems with whom Celerity contracts.  *Id.*  All MTs work remotely from home, using their own computer, internet connection, reference materials, foot pedal, transcription player software, and audio file player. ECF No. 48-1, 18:8–10; ECF No. 48-D at 4.  Upon being hired, MTs are subject to a 90-day probationary period used to ensure "a minimum amount of competence in a new MT."  ECF No. 51-H at ¶¶34–36.  Celerity considers MTs "employees from day one" despite this probationary period.  ECF No. 48-1, 76:8.

MTs at Celerity are paid by a line rate, also known as a piece rate.  MTs use a transcription system to take on jobs and upload completed work.  ECF No. 48-1, 16:13–22.  The transcription documents produced by an MT are "counted by bytes [and] divided by 65 to equal their line count;" then line counts are added together and multiplied by the line rate.  The starting line pay rate is $0.005 to $0.006 for "speech rec editing" and $0.006 to $0.008 for "standard

transcription."[1]  ECF No. 48-4 at 5.  MTs and defendants use a software that calculates line counts automatically for pay purposes.  ECF No. 51-H at ¶25.

MTs are paid on a semi-monthly basis.  A spreadsheet that identifies the number of lines MTs edit or transcribe each day accompanies the pay stubs MTs receive.  ECF No. 51-H at ¶28. The pleadings and briefings indicate that MTs are paid per 65-lines of work, not by hour. Defendants do not calculate hourly wages for MTs and have not done so at any point over the last three years.  ECF No. 48-1, 34:3–7, 49:20–23; ECF No. 48-5, 23:8–17.

Though Celerity pays MTs by line rate, not by hour, it does require MTs to record and report their hours worked.  ECF No. 51-H at ¶27.  Defendants require MTs to record their hours for the purpose of calculating State Unemployment Tax Authority ("SUTA" fees) for some states in which MTs work.  ECF No. 51-H at ¶40; ECF No. 48-1, 23:13–24.  MTs must record the hours they work each day on a "Time Entry" page in a proprietary Celerity system.  Celerity asks MTs to record the amount of time it takes, to the nearest quarter hour, to generate their lines of transcription, less the amount of time they take for personal breaks (such as lunch, laundry, picking up children, etc.).  ECF No. 48-1, 24:4–12.  The transcription upload system shows the supervisor which MT has which job "checked out" at any given time, and whether an MT is logged into the system.  ECF No. 48-1, 19:18–19; ECF No. 51-H at ¶52a.  However, it does not show whether the MT is actively working (e.g. if the MT is actively transcribing or editing). ECF No. 51-H at ¶52a.  MTs report their hours on an "on-your-honor system."  This means that

---

[1] The Court is not sure whether these rates are accurate or possibly off by a number of 10.  They are taken from defendants' responses to plaintiffs' interrogatories.  In Exhibit H to defendants reply ECF No. 51, Ms. Tribelhorn states that plaintiff Mr. Boyer's pay rate was $0.075 per sixty-five lines transcribed and $0.055 per sixty-five lines edited. ECF No. 51-H at ¶13.

defendants do not verify the exact number of hours MT worked nor do they oversee how MTs input their hours.  ECF No. 51-H at ¶27.

Celerity maintains an Associate Handbook that includes an overtime policy.  ECF No. 51-E at 10.  The "Hours of Work" section of the Handbook states "[a]ny non-exempt Associate who works in excess of 40 hours in a given work week will be eligible for overtime pay; however, prior approval for OT must be obtained. Please refer to the CSG Overtime Policy."  *Id.*  Celerity's overtime policy is included as Exhibit 8 to ECF No. 48.  Defendants do not dispute that this exhibit is their overtime policy.  The policy states that its purpose is "[t]o provide a uniform policy regarding overtime to Celerity Solutions Group Associations that conforms with the U.S. Department of Labor guidelines and Fair Labor Standards Act."  ECF No. 48-8 at 1.  Overtime at Celerity is calculated as follows:

> (Total Number of Lines For the Week x Base Rate) ÷ Number of Hours Actually Worked = Average Hourly Rate
> Average Hourly Rate + Half of Average Hourly Rate = Overtime Pay Rate
> Overtime Pay Rate x Number of Overtime Hours Worked = Overtime Compensation

The overtime policy provides an example of overtime calculation.  The overtime policy also states "[o]vertime must have prior approval from the Transcription Coordinator."  *Id.*

Denise Vadnais is the Transcription Coordinator and Director of Operations at Celerity.  ECF No. 48-1, 9:5–15; ECF No. 48-5, 5:22–23.  She supervises all MTs.  ECF No. 48-1, 9:20–22.  As the Transcription Coordinator, any request for overtime by an MT would be directed to Ms. Vadnais.  *Id.*; ECF No. 48-8 at 1.  No MT has ever approached Ms. Vadnais with a request for approval for overtime.  ECF No. 48-5, 27:22–28:2, 32:11–16, 35:3–7, 45:15–23, 56:18–22.  Ms. Vadnais states that MTs are not paid overtime because they are paid by the line.  ECF No.

48-5, 80:25–81:1.  Ms. Tribelhorn similarly confirms that no MT has ever requested overtime during her operation of Celerity.  ECF No. 48-1, 34:11–16, 37:15–17, 64:17–19.

## II. PROCEDURAL BACKGROUND

On February 4, 2019 plaintiffs filed this case against Celerity and its CEO, Dara Tribelhorn, as defendants.  ECF No. 1 at 1.  Plaintiffs allege that defendants have failed to pay minimum wage and overtime in violation of the Fair Labor Standards Act (FLSA).  *Id.* at 8–10.  On March 4, 2019 defendants filed an answer denying all claims.  ECF No. 9.  On May 6, 2019 plaintiffs filed a motion to conditionally certify an FLSA collective ("class") for this case.  ECF No. 13.  Defendants replied opposing this motion on June 18, 2019. ECF No. 19.  This Court denied plaintiffs' motion as premature on July 23, 2019.  ECF No. 24.

Plaintiffs then filed a motion for summary judgment on all claims on April 24, 2020.  ECF No. 48.  Plaintiffs argue in support of their motion that that defendants have failed to raise any genuine disputes of material fact or to plead any legally or factually valid defenses.  *Id.* at 5–9, 17–19.  On May 22, 2020 defendants filed a response opposing the motion for summary judgment.  ECF No. 51.  Plaintiffs in turn filed a reply to defendants' response on June 9, 2020.  ECF No. 55.

## III. STANDARD OF REVIEW

A court may grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  The moving party has the burden to show that there is an absence of evidence to support the nonmoving party's case.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  The nonmoving party must "designate specific facts showing that there is a genuine issue for trial."

*Id.* at 324.  A fact is material "if under the substantive law it is essential to the proper disposition of the claim."  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.  The court will examine the factual record and make reasonable inferences in the light most favorable to the party opposing summary judgment.  *See Concrete Works of Colo., Inc. v. City and Cty. of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994).

### IV. ANALYSIS

A. <u>**Application of the FLSA to this case**</u>

The Fair Labor Standards Act ("FLSA") is a federal law that establishes minimum wage, overtime pay, recordkeeping, and child labor standards.  Under the FLSA an "employer" is defined as "any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency, but does not include any labor organization (other than when acting as an employer) or anyone acting in the capacity of officer or agent of such labor organization."  29 U.S.C. § 203(d).  The term "employer" is expansive and includes persons or entities that have "managerial responsibilities" that give the person or entity "substantial control of the terms and conditions of the work of [its] employees."  *Falk v. Brennan*, 414 U.S. 190, 195 (1973).  An employer is covered by the FLSA if it is an "enterprise engaged in commerce" with annual gross revenue of $500,000 or greater.  29 U.S.C. § 203(s)(1)(A).

Plaintiffs allege that defendant Celerity is an employer under the FLSA because it is an enterprise engaged in commerce, namely the provision of medical transcription services, and it has annual gross revenue of over $500,000.  ECF No. 48 at 10.  Plaintiffs also allege Ms. Dara

6

Tribelhorn is an employer under the FLSA because she exercises "extensive control over, intimate involvement in, and sole ownership of" Celerity. *Id.* Defendants do not dispute that they are employers under the FLSA. *Compare* ECF No. 51 at 2, *with* ECF No. 48 at ¶¶3, 5. Ms. Tribelhorn admitted that Celerity's annual revenue is in excess of $500,000, and that she is an owner, member, and CEO of Celerity and has "maintained operational control" over the company since its inception in 2008. ECF No. 48-1, 62:14–19; ECF No. 51-H at ¶¶3–4. This Court thus finds there is no genuine dispute that defendants Celerity and Ms. Tribelhorn are employers covered by the FLSA.

The FLSA defines "employee" as "any individual employed by an employer", providing the individual does not fall under an exemption. 29 U.S.C. § 203(e)(1). Plaintiffs allege they are non-exempt employees under the FLSA. ECF No. 48 at ¶2. Defendants do not dispute that plaintiffs are non-exempt, and in fact admit this. *Compare* ECF No. 51 at 2, *with* ECF No. 48 at ¶2; *see also* ECF No. 48-2 at 4; ECF No. 48-1, 42:20–23. This Court thus finds that there is no genuine dispute that plaintiffs are non-exempt employees covered by the FLSA.

### B. Failure to pay minimum wage

Under the FLSA "[e]very employer shall pay to each of his employees . . . $7.25 an hour" as the federal minimum wage. 29 U.S.C. § 206(a)(1)(C). Employers must pay their employees at least the minimum wage whether they pay their employees by the hour or by some other method, such as piece rate. 29 C.F.R. § 776.5 ("The Act's individual employee coverage is not limited to employees working on an hourly wage. . . whatever the basis on which the workers are paid, whether it be monthly, weekly, *or on a piecework basis*, they must receive at least the equivalent of the minimum hourly rate") (emphasis added). For employees paid on a piece rate

basis "the regular hourly rate of pay is computed by adding together total earnings for the workweek from piece rates and all other sources . . . [and] then divid[ing] by the number of hours worked in the week for which such compensation was paid. 29 C.F.R. § 778.111. "Work not requested but suffered or permitted is work time. . . . [If an] employer knows or has reason to believe that [a worker] is continuing to work [then] the time is working time." 29 C.F.R. § 785.11.

The parties dispute whether defendants paid plaintiffs the minimum wage at all times. Plaintiffs allege that from January 1, 2016 to July 13, 2019 there were weeks in which plaintiffs' gross pay divided by hours worked totaled less than the minimum wage. ECF No. 48 at ¶21; ECF No. 48-6. Plaintiffs' allegations are based on their calculations derived from certain Celerity records. Defendants provided these records to plaintiffs during discovery. ECF No. 48-6; ECF 55-1. These records are broken down by workweek and encompass rows of data for each plaintiff, including their reported hours, lines worked, and gross pay. *Id.* Plaintiffs used these data to calculate hourly wages by week, along with alleged minimum wages and overtime wages owed. ECF No. 48-9. The Court's review of these records indicates that, at least according to these numbers, there do appear to be multiple weeks in which plaintiffs' hourly wages were less than $7.25 per hour.

### 1. Whether defendants knew or had reason to know plaintiffs' hourly wages

Defendants state "the only way that a person could work for Celerity, and not make minimum wage, is to overreport the hours that they were working on a daily and/or weekly basis." ECF No. 51 at 6. Defendants explain that MTs record their hours "not for any purpose related to payment of wages" but instead for State Unemployment Tax Authority ("SUTA")

reporting purposes.  *Id.* at 11.  As a result, defendants assert that they do not review or verify the hours that MTs record in Celerity's system.  *Id.* at 7–8.  Defendants effectively argue that they had no way of knowing plaintiffs' hourly wages.  Defendants do not dispute that they produced these records.  Nor do they argue that these data do not reflect the hours logged by plaintiff MTs in the fifteen-minute increments required by defendant's policy.  Defendants instead argue these numbers are estimates that "could never be used to determine actual hours worked, overtime, or hourly rate of pay" and were "never intended for any purpose under the Fair Labor Standards Act."  ECF No. 51-H at ¶¶42–44.

To support their argument that these estimates could lead to time overreporting, defendants state the following:

"By way of example, using the method MTs reported their hours, it could appear that they worked more hours than they did:

- Day 1: MT worked 7 hours 53 minutes, rounded to the nearest quarter hour they reported 8 hours worked.
- Day 2: MT worked 7 hours 53 minutes, rounded to the nearest quarter hour they reported 8 hours worked.
- Day 3: MT worked 7 hours 53 minutes, rounded to the nearest quarter hour they reported 8 hours worked.
- Day 4: MT worked 7 hours 53 minutes, rounded to the nearest quarter hour they reported 8 hours worked.
- Day 5: MT worked 8 hours 8 minutes, rounded to the nearest quarter hour they reported 8.25 hours worked.

Pursuant to this calculation, the MT would have recorded 40.25 hours worked that week, or 40 hours, 15 minutes and would be owed overtime pay for .25 hours. But in reality, the MT under this hypothetical scenario only worked 39 hours 40 minutes, or 20 minutes less than 40 hours in the week and thus the MT would not be owed overtime. When such estimates of time worked are extrapolated over time, it could appear that a MT is owed overtime when they actually did not earn it, or that the MT was not paid minimum wage when they actually were paid above minimum wage as such calculations of time worked by the plaintiffs are merely estimates, not statements of actual time worked."  ECF No. 51-H at ¶52a.

9

The Court takes defendants' point.  However, these alleged hypothetical overestimates are a result of defendants' *own approach* for tracking MT hours.  The duty to accurately track and record employee hours falls on the employer, not the employee.  "Every employer subject to any provision of this chapter . . . shall make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him."  29 U.S.C. § 211(c).  *See also* 29 C.F.R. § 516.2(a)(7); *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946) (". . . it is the employer who has the duty under § 11(c) of the Act to keep proper records of wages, hours and other conditions and practices of employment and who is in position to know and to produce the most probative facts concerning the nature and amount of work performed"), *superseded by statute on other grounds*, Portal to Portal Act of 1947, 29 U.S.C. §§ 251–262, *as recognized in Integrity Staffing Sols., Inc. v. Busk*, 574 U.S. 27 (2014); *Doty v. Elias*, 733 F.2d 720, 725 (10th Cir. 1984) (lower court's conclusions on hours employees worked, "although admittedly approximations," were not clearly erroneous where employer did not comply with his duty to keep proper records); *Wirtz v. McClure*, 333 F.2d 45, 46 (10th Cir. 1964) (employer required under the Act and regulations to keep records of employee daily or weekly hours).  If defendants wanted more exact timesheets for their MTs, the onus was on defendants to put such a system in place.  Defendants may not establish an imprecise system for tracking hours, and then turn around and use that system's imprecision to evade their FLSA obligation to ensure they pay their employees minimum wage.  Moreover, defendants used these hours to fulfill their SUTA fee obligations under state laws. The Court thus finds there is no genuine dispute as to whether defendants knew or had reason to know plaintiffs' hourly wages.

2. <u>Whether defendants failed to pay plaintiffs minimum wage in certain workweeks</u>

Defendants dispute their failure to pay minimum wage to plaintiffs on the basis that they "paid plaintiffs based on their line output" and that this "pay structure was and is consistent with industry set best practices for compensation of medical transcriptionists."  ECF No. 51 at 5. They argue that "[u]sing this method of payment, a medical transcriptionist will earn far in excess of [sic] federal minimum wage." *Id.*  Defendants also cite U.S. Department of Labor statistics indicating that median pay for Medical Transcriptionists exceeds the federal minimum wage, and defendants argue they pay plaintiffs in line with those rates. *Id.* at 6.

While the Court recognizes that defendants' payment method may match industry standards or best practices, these facts, even if true, are not relevant to this question of fact. Matching industry standards or best practices does not bear on whether defendants have violated the FLSA.  Even if an entire industry were to fail to abide by the federal minimum wage guidelines, and a company in the industry follows suit, this would not permit that company to escape FLSA liability.  Even if defendants' payment method *should* permit an MT to earn more than the minimum wage, this is irrelevant.  Plaintiffs allegations concern whether defendants *in fact* paid these plaintiffs at least the minimum wage for the hours they worked for Celerity.  They do not concern whether defendants' general payment approach typically results in a theoretical Celerity MT earning at least the minimum wage.  Finally, defendants' citing of national statistics on MT pay rates does not counter the data plaintiffs produced on their actual hourly wages earned.

Defendants have alleged nothing suggesting Exhibit 6 of ECF No. 48 is not the most accurate accounting of plaintiffs' weekly hours worked and gross pay provided over the time

period in question.  Ms. Tribelhorn admitted there had never been any issues or disputes regarding the accuracy of MTs time reporting.  ECF No. 48-1, 30:6–10.  Defendants have produced no evidence indicating any particular number or entry in their own records is inaccurate.  Nor have they produced evidence that they use or even have an alternative, more accurate approach for tracking MT hours worked.  *See generally* ECF No. 51.

Defendants have also produced no evidence calling into question the accuracy of plaintiffs' calculations in ECF No. 48 Exhibit 9.  They do not allege that plaintiffs' calculations are incorrect.  Instead, as discussed above, defendants argue the underlying data on which the calculations are based are mere estimates and thus cannot be considered "facts".  ECF No. 51-H at ¶52f.  The Court is not convinced by this argument.  The Court's cursory review of these calculations finds them to be correct and to show multiple weeks in which each plaintiffs' hourly pay was below minimum wage.  The Court thus finds there is no genuine dispute as to whether defendants failed to pay plaintiffs the minimum wage during certain weeks.

For the reasons stated above, plaintiff's motion for summary judgment is GRANTED on the issue of defendants' failure to pay plaintiffs minimum wage.

### C. Failure to pay overtime

Under the FLSA, "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."  29 U.S.C. § 207(a)(1).  For employees paid on a piece-rate basis, "the pieceworker is entitled to be paid, in addition to the total weekly earnings at [his] regular rate for all hours worked, a sum equivalent to one-half this regular rate of pay multiplied by the number

of hours worked in excess of 40 in the week."  29 C.F.R. § 778.111.  To prevail on a claim under

29 U.S.C. § 207(a)(1), a plaintiff-employee must show "that he actually worked overtime in an

amount that can be established by justifiable and reasonable inference," and "that the employer

had actual or constructive knowledge of the overtime."  *McGrath v. Cent. Masonry Corp.*, 276 F.

App'x 797, 799 (10th Cir. 2008) (citing *Davis v. Food Lion*, 792 F.2d 1274, 1276 (4th Cir.

1986)).

The parties dispute whether defendants failed to pay plaintiffs for overtime in certain

weeks.  Plaintiffs allege that from January 1, 2016 to July 13, 2019 there were weeks in which

each plaintiff worked more than forty hours per week but were not paid time-and-a-half for those

additional hours.  ECF No. 48 at ¶¶21, 23–33; ECF No. 48-6.  For example, plaintiffs point to

B.J. Whitney's time records showing one-hundred and fifty weeks during which Whitney

recorded more than forty hours of work.  ECF No. 48 at 14; ECF 48-6 at 15–18.  Similar to the

minimum wage discussion above, plaintiffs' allegations are based on their calculations derived

from defendants' own records.  ECF No. 48-6; ECF 55-1.  The Court's review of these records

similarly indicates that there appear to be multiple weeks in which plaintiffs worked over forty

hours and were not paid overtime.

Defendants do not dispute that MTs *could* earn overtime.  *See* ECF No. 51-E at 10.  They

also do not dispute plaintiffs' method of calculating overtime as used in ECF No. 48 Exhibit 9.

In fact, plaintiffs' method is the one outlined in defendants' overtime policy.  ECF No. 48-8 at 1.

It is also the method required under FLSA Regulations.  29 C.F.R. § 778.111.

1. Whether plaintiffs worked overtime

Defendants dispute that plaintiffs worked overtime. First, defendants argue that plaintiff's motion lacks affidavits or sworn testimony from plaintiffs that they performed work for which they were not properly compensated.  ECF No. 51 at 7.  It is true that plaintiff's motion for summary judgment does not include affidavits or declarations from plaintiffs regarding the number of hours they worked per week.  *See generally* ECF No. 48.  But plaintiffs need not rely only on affidavits or declarations.  To support their motion for summary judgment plaintiffs may "cit[e] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."  FED. R. CIV. P. 56(c)(1)(A).  Plaintiffs rely on records of hours worked that are kept and produced by defendants which fall under "electronically stored information" or "other materials."  Defendants also point out that the Court may only consider admissible evidence, citing to *Gross v. Burggraf Const. Co.*, 53 F.3d 1531, 1541 (10th Cir. 1995).  ECF No. 51 at 4.  I agree.  *See* FED. R. CIV. P. 56(c)(2).  Defendants then state, "arguments of counsel are not evidence and it is simply not enough to rely on the arguments or speculation of counsel."  ECF No. 51 at 4.  Again, I agree.  But plaintiffs' contentions are not solely based on arguments of counsel.  They are based on defendants' own hour and wage records, and plaintiffs' derivative calculations.  Defendants do not object to the admissibility of either the records or the calculations.

Second, defendants argue that Celerity could not use hours recorded by MTs to calculate overtime because those hours are mere estimates.  ECF No. 51-H at ¶¶42–44.  As I discussed above, employers have the responsibility to accurately track and record employee hours, not employees.  29 U.S.C. § 211(c); 29 C.F.R. § 516.2(a)(7).  Defendants produce no evidence that

they possess more accurate overtime calculations than those produced by plaintiffs.  Moreover, the Court sees no way defendants themselves *could* calculate overtime other than by using the exact records defendants keep and the exact method plaintiffs used.

Third, defendants assert "any overtime reported by plaintiffs was not the result of time worked in excess of 40 hours in a workweek, but rather a simple clerical error on the part of the MT recording and estimating his or her time worked in a given day."  ECF No. 51 at 9.  This is a mere unsupported allegation.  Defendants have produced no evidence to suggest the hours recorded by plaintiffs were clerical errors instead of genuine estimates based on defendants' policy.  Ms. Tribelhorn in fact admitted that there had never been issues or disputes regarding the accuracy of time reporting by an MT.  ECF No. 48-1, 30:6–10.  The Court thus finds there is no genuine dispute as to whether plaintiffs worked overtime.

 2. <u>Whether defendants had actual or constructive knowledge of plaintiffs' overtime</u>

Defendants argue that plaintiffs are not owed overtime because none of them requested to work overtime.  ECF No. 51 at 9.  They point to their Overtime Policy which states "[a]ny non-exempt Associate who works in excess of 40 hours in a given work week will be eligible for overtime pay; however prior approval for OT must be obtained."  *Id.*; ECF No. 51-E at 7.  Both Ms. Tribelhorn and Ms. Vadnais confirmed that Celerity policy requires MTs to request permission to work overtime before working beyond forty hours in a week.  ECF No. 48-1, 45:3–23; ECF No. 48-5, 47:2–3.

This argument raises the factual issue of whether defendants knew or should have known that plaintiffs were working beyond forty hours in any given week, i.e. whether defendants had actual or constructive knowledge of overtime.  There is no dispute that plaintiffs never requested

overtime before working more than forty hours per week.  ECF No. 48-1, 34:11–16, 37:15–17, 64:17–19. ECF No. 48-5, 80:25–81:1.  However, failure of plaintiffs to request overtime – while apparently contrary to company policy -- does not absolve defendants of their obligation to compensate plaintiffs for overtime actually worked.  "An employer who is armed with knowledge that an employee is working overtime cannot stand idly by and allow an employee to perform overtime work without proper compensation, even if the employee does not make a claim for the overtime compensation." *McGrath*, 276 F. App'x at 801 (quoting *Harvill v. Westward Commc'ns*, 433 F.3d 428, 441 (5th Cir.2005)).  That a defendant gives an employee instructions not to work overtime "is not a defense to a claim for overtime actually worked" because "[i]t has long been established that the purpose of the Fair Labor Standards Act cannot be frustrated by an employer's instructions or even a contract not to work overtime." *Wirtz v. Bledsoe*, 365 F.2d 277, 278 (10th Cir. 1966) (citing *Handler v. Thrasher*, 191 F.2d 120 (10th Cir. 1951)).

In *Wirtz* the Court found the employer had knowledge of the employees' overtime because the hours appeared on their timesheets.  *Id.*  Similarly, here defendants had constructive knowledge, at minimum, of overtime hours worked by plaintiffs.  Plaintiff MTs recorded their hours in fifteen-minute increments in defendants' proprietary system at the direction of defendants.  The records on which plaintiffs base their unpaid overtime allegations are kept and were produced by defendants.  Ms. Tribelhorn admitted that she reviewed these time records for SUTA fee purposes and to "assess production-per-hour statistics . . . in the course of regular reviews."  ECF No. 48-1, 23:17–20, 26:5–9.  Defendants have produced no evidence showing, nor have they even alleged, that they lacked access to information regarding the hours each

plaintiff worked per week.  The Court thus finds there is no genuine dispute as to whether

defendants had actual or constructive knowledge of the overtime plaintiffs worked.

    3. <u>Whether defendants failed to pay plaintiffs for overtime worked</u>

    Defendants dispute that they failed to compensate plaintiffs for overtime.  As discussed

above, defendants have produced no evidence questioning the accuracy of plaintiffs' calculations

in ECF No. 48 Exhibit 9.  Nor have the alleged plaintiffs' calculations are incorrect.  They

instead argue the underlying data are estimates and thus cannot be the basis for overtime

calculations.  ECF No. 51-H at ¶¶42–44, 52f.  The Court dispensed with this argument above.

Further, defendants have offered no evidence to indicate they *have* paid plaintiffs for any

overtime hours.  In fact defendants offered much evidence suggesting the contrary – that

defendants have never paid any MT overtime.  ECF No. 48-1, 34:11–13; ECF No. 48-5, 80:25–

81:1.  The Court thus finds there is no genuine dispute as to whether defendants failed to pay

plaintiffs the minimum wage during certain weeks.

    For the reasons stated above, plaintiff's motion for summary judgment is GRANTED on

the issue of defendants' failure to pay plaintiffs overtime.

    **D. <u>Damages</u>**

    The FLSA provides for damages for failure to pay minimum wage or overtime.  29

U.S.C. § 216(b) ("Any employer who violates the provisions of section 206 or section 207 of this

title shall be liable to the employee or employees affected in the amount of their unpaid

minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional

equal amount as liquidated damages.").  Both unpaid wages and liquidated damages are the

norm. *Koellhoffer v. Plotke-Giordani*, 858 F. Supp. 2d 1181, 1192 (D. Colo. 2012) ("Ordinarily,

an employer who violates the FLSA is liable for both unpaid wages and an additional equal amount as liquidated damages.").

     1. <u>Whether defendants' omissions under the FLSA were in good faith and based on reasonable grounds.</u>

     An employer who violates sections 206 or 207 of the FLSA may avoid liquidated damages if he shows "that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation. . . ." 29 U.S.C. § 260. The burden is on the employer to prove "by plain and substantial evidence, subjective good faith and objective reasonableness." *Burke v. Alta Colleges, Inc.*, No. 11-cv-02990, 2014 WL 2882807, at *4 (D. Colo. June 25, 2014) (citing *Reich v. S. New Eng. Telecomm. Corp.*, 121 F.3d 58, 71 (2d Cir. 1997)). Courts often look to employer reliance on attorneys, state personnel experts, and other advisors to determine whether an FLSA violation is reasonable. *See e.g. Mumby v. Pure Energy Servs. (USA), Inc.*, 636 F.3d 1266, 1270 (10th Cir. 2011); *Pabst v. Okla. Gas & Elec. Co.*, 228 F.3d 1128, 1136–37 (10th Cir. 2000); *Cross v. Ark. Forestry Comm'n*, 938 F.2d 912, 917–18 (8th Cir. 1991). "An employer's ignorance of the requirements of the Act does not constitute reasonable grounds for believing that his actions complied with the Act." *Doty*, 733 F.2d at 726 (citing *Marshall v. Brunner*, 668 F.2d 748, 753 (3d Cir. 1982); *Barcellona v. Tiffany Eng. Pub, Inc.*, 597 F.2d 464, 464 (5th Cir. 1979)). An employer's misunderstanding of the FLSA's requirements is similarly not a reasonable ground. *Crenshaw v. Quarles Drilling Corp.*, 798 F.2d 1345, 1351 (10th Cir. 1986), *disapproved of on other grounds by McLaughlin v. Richland Shoe Co.*, 486 U.S. 128 (1988).

Plaintiffs dispute whether defendants' violations were in good faith and based on reasonable grounds.  Plaintiffs assert that defendants neither argue nor provide evidence that they took any steps to understand or comply with the FLSA. ECF No. 55 at 8.  Defendants assert that they use national industry payment standards, they have never had an FLSA complaint, they maintain a written overtime policy, and that MTs read and acknowledged the overtime policy. ECF No. 51 at 11.

The Court finds little in the record that bears on whether defendants' violations were in good faith or based on reasonable grounds.  My impression is that defendants' actions were taken in good faith, and for present purposes I will assume, without deciding, that they were. However, I find that it is beyond genuine dispute that defendants' failure to pay the minimum wage and overtime was not objectively reasonable.  As noted, ignorance of the law is not an excuse.  Moreover, it appears defendants were at least nominally aware of FLSA requirements. Celerity's Overtime Policy states its purpose is to conform with the FLSA.  ECF No. 48-8.  In her deposition Ms. Tribelhorn states that industry standards for line payment should be sufficient for MTs to earn above the federal minimum wage.  ECF No. 48-1, 50:10–18.  However, defendants also make clear they have never attempted to calculate hourly wages or overtime for FLSA purposes.  They reiterate multiple times that MT hours data have only ever been collected for compliance with SUTA fees, not FLSA.  ECF No. 51-H at ¶¶40, 42–44; ECF No. 48-1, 23:13–24.

This Court does not doubt that defendants have never received an FLSA complaint in the past.  Nor does the Court doubt that defendants care deeply about their employees as they indicate.  ECF No. 51-H at ¶52g.  Indeed, the Court can understand how for many MTs, the

opportunity to work at home and at their own pace could be sufficiently rewarding for lifestyle reasons that the rate of pay or the concept of overtime would not be of concern to them. However, I conclude that plaintiffs are entitled to liquidated damages as a matter of law. Plaintiff's motion for summary judgment is GRANTED on the issue of liquidated damages.

  2. <u>Whether defendants' violations were willful</u>

  The FLSA typically has a two-year statute of limitations.  29 U.S.C. § 255(a).  If an employer's violation is willful, however, the statute of limitations is three years.  *Id.*  The question of whether an FLSA violation is willful is a mixed question of law and fact.  *Reich v. Monfort, Inc.*, 144 F.3d 1329, 1334 (10th Cir. 1998).  The standard is whether an employer "knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA]."  *Id.* (quoting *McLaughlin*, 486 U.S. at 133 (internal citations omitted)).  "Reckless disregard can be shown through 'action entailing an unjustifiably high risk of harm that is either known or so obvious that it should be known.'"  *Mumby*, 636 F.3d at 1270 (quoting *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 68 (2007).  The court's focus is on "the employer's diligence in the face of a statutory obligation, not on the employer's mere knowledge of relevant law."  *Mumby*, 636 F.3d at 1270.

  The parties dispute whether defendants' FLSA violations were willful.  Plaintiffs argue that defendants did nothing to ensure plaintiffs' compensation complied with the FLSA.  ECF No. 48 at 16.  They also argue defendants had no guidelines in place to ensure compliance.  ECF No. 55 at 9.  Defendants counter that there is no evidence they ever knew of any FLSA violation prior to this lawsuit.  ECF No. 48 at 10.  Further, since Celerity's inception in 2008 neither Celerity nor Ms. Tribelhorn have ever received a complaint about minimum wage, overtime, or

other FLSA requirements prior to Mr. Boyer's complaint on his resignation date.  ECF No. 51-H at ¶¶45, 52b.

Viewing the evidence in the light most favorable to defendants, a reasonable jury could find that defendants neither knew nor showed reckless disregard for possible FLSA violations.  It seems likely that Celerity had operated for twelve years, and Ms. Tribelhorn for much longer, without any knowledge that their line pay rate approach might lead to FLSA violations.  Defendants made efforts to pay employees according to industry standards that suggested MTs would make at least minimum wage depending on their transcription speed.  Celerity maintained an overtime policy that all MTs acknowledged when signing their contracts, and no MT had ever exercised the policy by requesting overtime.  Though this evidence does not excuse defendants' violations, it does suggest defendants had no intention to violate the FLSA or even knew their actions could lead to FLSA violations.

The Court doubts that a jury will find willfulness in this case.  However, the Court's only role is to determine whether there is a genuine dispute about it.  The Court thus finds that there is a genuine dispute as to whether defendants' FLSA violations were willful, and therefore, plantiffs' motion for summary judgment is DENIED on the issue of the applicable statute of limitations.

### 3. Damages amount

The parties dispute the amount of damages owed to plaintiffs.  Plaintiffs argue they are owed unpaid wages and liquidated damages based on a three-year statute of limitations, totaling $100,133.94.  ECF No. 48 at 17.  Defendants deny owing any damages.  Because the Court finds there is a genuine dispute of material fact regarding the applicable statute of limitations, the

damages amount cannot be resolved at this time.  Plaintiff's motion for summary judgment is thus DENIED on the issue of damages.

## ORDER

Plaintiff's motion for summary judgment, ECF No. 48, is GRANTED in part and DENIED in part.  The Court enters summary judgment for plaintiffs on the issues of defendants' failure to pay minimum wage, defendants' failure to pay overtime, and liquidated damages. Summary judgment is denied with respect to whether defendants' violations were willful and the amount of damages owed.

DATED this 28th day of August, 2020.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge