# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 1:19-CV-00306-RBJ

TONY BOYER,
Individually and on behalf of all others similarly situated,

    Plaintiff,

v.

CELERITY SOLUTIONS GROUP, LLC., *et al*.

    Defendants.

---

## PLAINTIFF'S MOTION FOR APPROVAL
## OF FLSA COLLECTIVE ACTION SETTLEMENT

---

COME NOW Plaintiff Tony Boyer ("Plaintiff" or "Boyer"), on behalf of himself and other similarly situated individuals (collectively, "Plaintiffs"), by and through counsel, and for this Motion for Approval of FLSA Collective Action Settlement, state as follows:

Plaintiffs and Defendants Celerity Solutions Group, LLC ("Celerity") and Dara Tribelhorn ("Tribelhorn") (collectively, the "Parties") have reached a settlement of this FLSA collective action. For the reasons more fully set forth below, Plaintiffs respectfully request this Court enter an order approving the settlement.

### **CERTIFICATE OF COMPLIANCE WITH D.C. COLO. L. CIV. R. 7.1(A)**

Pursuant to Local Rule 7.1(a), Plaintiffs sought Defendants' consent to this Motion for Approval of FLSA Collective Action Settlement. Defendants consented pursuant to the terms of the Settlement Agreement.

**BACKGROUND**

Plaintiffs worked for Defendants as medical transcriptionists ("MTs"), performing transcription services for third party healthcare providers. [ECF No. 1]. On February 4, 2019, Plaintiff filed the Complaint against Defendants. [ECF No. 1]. In the Complaint, Plaintiff alleged, *inter alia*, Defendants failed to pay overtime compensation and failed to pay at least the federal minimum wage for all hours worked by MTs. [ECF No. 1]. Moreover, Plaintiff alleged Plaintiffs were entitled to liquidated damages and that Defendants willfully violated the FLSA. [ECF No. 1].

In their Answer, Defendants denied all the alleged violations of the FLSA. [ECF No. 9]. Defendants further raised twelve (12) affirmative defenses. [ECF No. 9]. Defendants asserted, *inter alia*, Plaintiffs' claims were barred because all actions taken by Defendants were lawful, justified and taken in good faith. [ECF No. 9]. Defendants also argued Plaintiffs' claims were barred by the provisions of the Offer of Employment and Employment Contract entered between the MTs and Defendants and that the MTs knew full-well the arrangement before beginning their employment. [ECF No. 9].

Since Plaintiff filed the Complaint nearly two (2) years ago, the Parties engaged in contested litigation. [*See* ECF Nos. 1-58]. On May 6, 2019, Plaintiff first moved for conditional certification of the case as a FLSA collective action. [ECF No. 13]. Defendants filed a response in opposition to Plaintiff's motion challenging conditional certification. [ECF No. 19]. On July 23, 2019, the Court denied Plaintiff's first motion for conditional certification without prejudice, noting that the motion appeared to be premature. [ECF No. 24].

After obtaining written discovery responses, transmitting correspondence about outstanding discovery, reviewing significant document production, and deposing Defendant

2

Tribelhorn, Plaintiff prepared and filed a renewed motion for conditional certification on September 12, 2019. [ECF No. 28, 31]. On October 18, 2019, the Court granted FLSA conditional certification and approved Plaintiff's proposed class notice for dissemination. [ECF No. 33]. Between November 13, 2019 and January 24, 2020, ten (10) opt-in Plaintiffs filed consent to join forms. [ECF Nos. 34-40].

The Parties continued to engage in substantial discovery after the end of the opt-in period. Plaintiff deposed Defendants' Transcription Coordinator Denise Vadnais on January 28, 2020. Defendants deposed Plaintiffs Tony Boyer, B.J. Whitney, Rebecca Tully, and JoAnna Quintana-Davis during June 2020. On April 17, 2020, the Parties engaged in mediation with the Hon. C. Scott Crabtree. After unsuccessful mediation, the Parties continued to vigorously litigate the claims and defenses in the lawsuit. [*See* ECF Nos. 48-58].

On April 24, 2020, Plaintiffs filed a motion for summary judgment, which Defendants opposed. [ECF No. 48, 51, 55]. In preparation for the Parties' Trial Preparation Conference set on September 2, 2020, Plaintiffs prepared motions in limine, jury instructions, and witness and exhibit lists. On August 28, 2020, this Court granted, in part, Plaintiff's motion for summary judgment. [ECF No. 59]. The Court determined Plaintiffs worked hours for which they were not properly compensated; Defendants had knowledge of the violations through their own time records; and Defendants failed to establish the good faith defense. The Court also found that Defendants did not refute Plaintiffs' damage calculations. [ECF No. 59]. The Court concluded Plaintiffs were entitled to damages on their claim against Defendants. [ECF No. 59]. The Court, however, found a genuine issue of material fact existed as to whether Defendants' violations were willful for purposes of the applicable statute of limitations. [ECF No. 59].

On September 2, 2020, the Parties appeared before the Court for a Trial Preparation Conference. [ECF No. 61]. After the Court's Trial Preparation Conference, the Parties engaged in further settlement discussions. On or about September 16, 2020, the Parties reached an agreement on key terms of settlement and thereafter memorialized this mutual understanding through the Settlement Agreement. [*See also* ECF No. 62].

The Settlement Agreement provides that Defendants shall pay a total amount of $107,500.00 to resolve the case. This amount is designed to cover unpaid overtime wages, unpaid minimum wages, liquidated damages, a service award, and attorney's fees and expenses. The Settlement Agreement further sets out allocation of the settlement funds. Each opt-in plaintiff is allocated a settlement amount equal to each's unpaid overtime and minimum wage hours based on Defendants' timekeeping records. On average, settlement class members are receiving $3,890.45. This amounts to significant recovery for MTs in FLSA litigation.[1] Further, the settlement includes a "balloon" clause escalating the amounts due in the event of non-payment, substantially deterring the possibility of non-payment. [Ex. 2—Settlement Agreement].

## DISCUSSION

Settlement of an FLSA collective action generally requires court approval because private agreements will not effectuate a valid release for the employer. *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1352-54 (11th Cir. 1982); *see also Barrentine v. Arkansas–Best Freight Sys.*, 450 U.S. 728, 740 (1981). A court reviews a proposed FLSA settlement to determine whether it involves a bona fide dispute and whether it is a fair and reasonable resolution. *Lynn's*, 679 F.2d at 1353; *Slaughter v. Sykes Enterprises, Inc.*, 2019 WL 529512, at *6 (D. Col. Feb. 11, 2019). "If the settlement reflects a reasonable compromise of issues actually in dispute, the Court may

---

[1] *See, e.g.*, *Baker v. Vail Resorts Mgmt. Co.*, 2014 WL 700096, at *2 (D. Col. Feb. 24, 2014) (approving settlement wherein a single plaintiff received $2,772.35).

4

approve the settlement to promote the policy of encouraging settlement of litigation." *Fulton v. TLC Lawn Care, Inc.*, 2012 WL 1788140, at *3 (D. Kan. May 17, 2012) (citing *Lynn's*, 679 F.2d at 1354); *see also Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1149 (8th Cir. 1999) ("[a] strong public policy favors [settlement] agreements, and courts should approach them with a presumption in their favor").

The Court generally makes some final class certification finding before it can approve a collective action settlement. *Davis v. Crilly*, 292 F. Supp. 3d 1167, 1171 (D. Col. 2018) (citation omitted). However, an FLSA collective action is not a class action—individuals participating affirmatively choose to be bound and represented by counsel, and no absent class members' claims are being settled. *See Schmidt v. Fuller Brush Co.*, 527 F.2d 532, 536 (8th Cir. 1975).

**I.     The Settlement Agreement Resulted From Contested Litigation And Represents A Fair And Reasonable Resolution Of A Bona Fide Dispute.**

The Court should approve the Settlement Agreement because Plaintiffs are similarly situated, the Parties vigorously litigated a bona fide dispute under the FLSA for almost two (2) years, the Settlement Agreement is fair and reasonable and the result of arm's-length negotiations between experienced counsel, and the Settlement Agreement provides significant and timely relief to Plaintiffs for unpaid wages.

**A.     The Settlement Agreement Provides Plaintiffs Fair and Reasonable Relief On A Bona Fide Dispute Between The Parties.**

The Settlement Agreement secures fair and reasonable relief for Plaintiffs in the face of a bona fide dispute between the Parties. To demonstrate the existence of a bona fide dispute, parties must provide the Court with: "(1) a description of the nature of the dispute; (2) a description of the employer's business and type of work performed by the employees; (3) the employer's reasons for disputing the employees' right to minimum wage or overtime; (4) the employees' justification for

the disputed wages; and (5) if the parties dispute the computation of wages owed, each parties' estimate of the number of hours worked, and the applicable wage." *Davis*, 292 F. Supp. 3d at 1172. Here, the Parties presented the Court with substantial evidence and reasons demonstrating both the existence of a bona fide dispute between the Parties and the reasonableness and fairness of the proposed settlement. [*See, e.g.*, ECF Nos. 13, 19, 28, 29, 48, 51].

### i. The Parties Fundamentally Disagreed About The Nature Of Defendants' Business As Well As Liability And Damages.

The Parties contested many issues in the lawsuit concerning Defendants' business, including but not limited to: (1) whether Plaintiffs were owed unpaid overtime; (2) whether Plaintiffs worked over forty (40) hours in any workweek; (3) whether Plaintiffs were owed unpaid minimum wages; (4) whether Defendants had knowledge of Plaintiffs working overtime or earning under the minimum wage; (5) whether Defendants' business model required Plaintiffs to work in excess of forty (40) hours per workweek or to work so many hours that it drove Plaintiffs' hourly wages below $7.25 per hour; and (6) whether Defendants willfully violated the Fair Labor Standards Act. [ECF Nos. 1, 9]. The Parties contested conditional certification twice and engaged in many depositions and other discovery. Even after the Court entered its summary judgment Order, the Parties continued to dispute many issues, such as whether Defendants willfully violated the FLSA, a final and proper calculation of damages, jury instructions, and motions in limine, the potential outcome on appeal, and whether recovery was achievable from Defendants.

Against the backdrop of these bona fide disputes (and the risk and uncertainty that came with them), the Settlement Agreement secures significant relief for Plaintiffs. The Settlement Agreement further guards against additional risk and uncertainty, should the matter have proceeded to trial, appeal and potential post-judgment recovery efforts. Despite Plaintiffs prevailing on many issues at summary judgment, the Court noted there were still genuine issues

6

of material fact and law in the case. [ECF No. 59] ("The Court doubts that a jury would find willfulness in this case"). Trial on these issues could have directly (and negatively) impacted Plaintiffs' recoveries (or, in the case of some Plaintiffs, their ability to recover anything at all). The Settlement Agreement, however, secures relief for Plaintiffs and safeguards against this foreseeable risk and uncertainty.

The Settlement Agreement provides Plaintiffs with amounts closer to the amounts they would have received under a three-year statute of limitations. On September 1, 2020, Plaintiffs filed damage calculations for both two and three-year statutes of limitations. [ECF No. 60, 60-1, 60-2]. Plaintiffs calculated damages for a two-year statute of limitations at $16,545.56 and $67,507.76 under a three-year statute of limitations. [ECF No. 60]. Plaintiffs' final recovery of $42,794.94 is significantly closer to the three-year total than the two-year calculation.

### ii. The Settlement Agreement Resulted After Experienced Counsel Engaged In Contested Litigation And Arm's-Length Negotiations.

The Parties' respective counsel—experienced litigators—extensively briefed and argued legal and factual issues underlying this litigation for nearly (2) years. Prior to settlement, the Parties fully briefed on two occasions, and the Court ultimately granted, conditional certification of the proposed class. In addition, the Parties' exchange of significant information and records in discovery ensures the Settlement Agreement constitutes an informed, fair, and reasonable resolution of a bona fide dispute. Defendants provided Plaintiffs and their counsel with time and payroll records for all Plaintiffs. The records and data enabled counsel to reasonably assess the value of the Plaintiffs' claims. The Parties took several depositions of all parties and material witnesses. The Parties engaged in contested motion practice before the Court on multiple occasions, including but not limited to summary judgment proceedings. In total, the case history

demonstrates the absence of collusion or fraud, or any other exceptional circumstance which would weigh against settlement approval.

The Parties' counsel vigorously prosecuted and defended their clients' respective interests at all stages of the litigation. Based on their knowledge of the case and applicable law, as well as their experience with FLSA collective actions, Plaintiffs' counsel believes the settlement is fair, reasonable, and appropriate. *See In re BankAmerica Corp. Sec. Lit.*, 210 F.R.D. 694, 702 (E.D. Mo. 2002) ("Although the Court is not bound by the counsel's opinion, their opinion is nonetheless entitled to great weight"). Plaintiffs' lead counsel, Kevin J. Dolley ("Dolley"), has significant experience in wage and hour class- and collective-action litigation across the country. [*See* Ex. 1— Dolley Affidavit]. Dolley respectfully believes the Settlement Agreement constitutes a fair and reasonable settlement of their claims. *Id*.

Accordingly, Plaintiffs respectfully request the Court find the Settlement Agreement to be a fair and reasonable resolution of a bona fide dispute over their FLSA claims.

### B. To The Extent Appropriate Or Necessary, Confirmation of FLSA Certification For Settlement Purposes Is Appropriate Because Plaintiffs Are Similarly Situated.

Not all courts in the Tenth Circuit require a final certification determination to approve an FLSA settlement. *See, e.g.*, *Morton v. Transcend*, 2017 WL 977812, at *1 (D. Col. March 13, 2017). However, some courts will consider the issue when reviewing motions for FLSA collective action settlement approval by addressing the following factors: (1) the disparate factual and employment settings of the individual plaintiffs; (2) various defenses available to the defendant(s) which appear to be individual to each plaintiff; and (3) fairness and procedural considerations. *Id.* Nonetheless, the policy encouraging settlement of litigation weighs in favor of final collective

8

action certification. *Koehler v. Freightquote.com, Inc.*, 2016 WL 1403730, at *6 (D. Kan. April 11, 2016).

Here, the Court has ample basis in the record upon which it can finally certify the collective of Plaintiffs for purposes of settlement. The Parties extensively briefed, and presented significant evidence on, the issue of whether Plaintiffs were "similarly situated." [*See, e.g.*, ECF Nos. 28, 31, 48]. Plaintiff showed how Plaintiffs were, as a matter of fact and law, similarly situated. [ECF Nos. 28, 31, 48]. In particular, Plaintiff adduced evidence that, all MTs performed the same work (*i.e.*, medical transcription) and were subject to the same expectations, requirements, control, and policies and practices of Defendants. [ECF No. 28]. Based on this evidence, the Court agreed and conditionally certified Plaintiff's proposed class. [ECF No. 33]. For the same reasons, Plaintiff respectfully requests the Court finally certify the action for settlement purposes.

### C. The Settlement Agreement Provides For A Reasonable Service Payment To Named Plaintiff Boyer.

Service payments are common for a named plaintiff in collective and class wage and hour litigation. *See Pliego v. Los Arcos Mexican Restaurants, Inc.*, 313 F.R.D. 117, 131 (D. Col. 2016). Courts may look at certain factors in assessing the reasonableness of a service payment, including: (1) the actions taken by the plaintiff to protect interests of the class; (2) the degree to which the class benefited from those actions; and (3) reasonable fears of workplace retaliation. *Id*. (approving service award of $7,500 and discussing cases where courts approved service awards of up to $15,000).

Here, the Court should grant Plaintiff Boyer the requested service award of $2,000. Plaintiff Boyer was the named plaintiff who stepped forward to file the litigation and participated in written discovery and deposition. Boyer also provided guidance and understanding of the specifics of Defendants' employment practices from the beginning of the lawsuit and worked

9

closely and cooperatively with Plaintiff's counsel throughout the course of the lawsuit. Plaintiff Boyer's service, and willingness to serve, in this role provided important benefits to and value for all Plaintiffs and were pivotal to procuring the ultimate settlement obtained.

> **D.    The Settlement Agreement Provides For A Reasonable And Appropriate Award For Attorneys' Fees and Costs.**

An FLSA settlement agreement must include a reasonable attorneys' fees award. *Baker v. Vail Resorts Mgmt. Co.*, 2014 WL 700096, at *1 (D. Col. Feb. 24, 2014); 29 U.S.C. § 216(b). "[T]here is a general preference that parties reach an agreement regarding the fee award." *Teague v. Acxiom Corp.*, 2018 WL 3772865, at *3 (D. Col. Aug. 9, 2018) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)).

To determine the reasonableness of a fee request, a court begins with consideration of the "lodestar amount," which represents the number of hours reasonably expended by counsel multiplied by a reasonable hourly rate. *Id.* at *3 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). The lodestar amount may be considered in light of consideration of the amount in controversy, the length of time required to represent the client effectively, the complexity of the case, the value of the legal services to the client, awards in similar cases, and the degree of success achieved. *Id.*; *but see Ruiz v. Act Fast Delivery of Colorado*, Civil No. 14-cv-00870-MSK-NYW, ECF No. 132 (D. Col. Jan. 9, 2017) (unpublished) (holding that, with few exceptions, FLSA settlements and accompanying attorney's fees do not require court approval).

After vigorously representing Plaintiffs for nearly two years on a fully contingent basis and expending several hundred hours in diligently pursuing their individual and collective claims, Plaintiffs' Counsel achieved an excellent result, securing significant recovery for nearly a dozen low-wage earning MTs. [Ex. 1—Dolley Affidavit; Ex. 3—Billing Invoice]. This factor alone— that is, the substantial time and labor required to successfully prosecute the claims and secure

recovery on behalf of Plaintiffs—weighs heavily in favor of the reasonableness of the requested fee award.

Per the Settlement Agreement, Plaintiffs' Counsel will receive $64,705.06 in attorneys' fees and costs.  This amount is substantially less than the amount Plaintiffs' counsel could have pursued after trial based on the hours billed and work performed in this litigation.  Plaintiffs' Counsel expended 683.40 hours prosecuting the case totaling $231,915.00 in potentially recoverable fees and expenses over two (2) years. [*See* Ex. 3—Dolley Billing Invoice].  Further, while class members will receive payment upon approval, much of the payment to counsel is deferred into the future for payment.

A determination of an attorneys' fee award must include consideration of the contingent nature of the fee and the challenges involved in obtaining settlement.  "It is an established practice in the private legal market to reward attorneys for taking on risk of non-payment by paying them a premium over the normal hourly rates for winning contingency cases." *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F. 3d 1291, 1299 (9th Cir. 1994).  Here, Plaintiffs' Counsel has received no compensation and has carried the risk of non-recovery during the course of this litigation, spent a substantial amount of time to secure relief for Plaintiffs, and now seek only a fraction of their potentially recoverable fees. [Ex. 1—Dolley Affidavit].

For the foregoing reasons, Plaintiffs respectfully request the Court approve the award of reasonable attorneys' fees and costs per the Settlement Agreement.

## CONCLUSION

Plaintiffs respectfully request this Court enter an Order: (1) finally certifying the collective action for settlement purposes; (2) approving the Settlement Agreement as fair, appropriate and reasonable; (3) directing disbursement of settlement funds to Plaintiffs per the terms of the Settlement Agreement; (4) approving attorneys' fees and expenses in the amount of $64,705.06 to Plaintiffs' Counsel; (6) approving the service award payment to Plaintiff in the amount of $2,000.00; and (7) for such other and further relief as this Court deems appropriate.

Respectfully submitted,

By: */s/ Kevin J. Dolley*
Kevin J. Dolley (E.D. Mo. #54132MO)
Mark J. Obermeyer (E.D. Mo. #63140MO)
DOLLEY LAW, LLC
12977 N. Outer Forty, Suite 230
St. Louis, MO 63141
Phone: (314) 645-4100
Fax: (314) 736-6216
kevin@dolleylaw.com
mark.obermeyer@dolleylaw.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that I have on October 1, 2020 served a true and accurate copy of the foregoing through the Court's electronic case filing system to the following:

Zach Westerfield
Westerfield & Martin, LLC
600 17th St.
Suite 2800, South Tower
Denver, CO 80202
Telephone: (303) 915-5002
Email: zach@westerfieldlaw.com

*/s/ Kevin J. Dolley*